IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAIVIN KARNANI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  1:25-cv-462(LMB/WEF) |
| | ) |
| INTERACTIVE BROKERS LLC, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Before the Court is defendant Interactive Brokers LLC's ("defendant" or "IBKR") Motion to Dismiss pro se plaintiff Jaivin Karnani's ("plaintiff" or "Karnani") ten-count Complaint. Defendant's Motion to Dismiss has been fully briefed and oral argument has been held. For the reasons stated in open court and explained more fully in this Memorandum Opinion, defendant's Motion to Dismiss will be granted.

**I. BACKGROUND**

Karnani maintained a brokerage account with Futu, Inc. (now Moomoo Financial Inc.) ("Futu"). IBKR is a Connecticut-based clearing broker whose clients, including Futu, are introducing brokers; that is, they are brokers who work directly with investors. As a clearing broker, IBKR holds omnibus accounts from brokers like Futu but does not know the identities of its clients' investors. When assessing risk, IBKR analyzes an omnibus account as a whole, not individual accounts within it.

IBKR and Futu entered into a Clearing Agreement that governed the margin requirements, risk classifications, and liquidation protocols that IBKR applied to its omnibus account comprised of individual Futu accounts ("the Moomoo Account"). As relevant here, the

Clearing Agreement set margin requirements that relied on automated systems to classify positions for potential forced liquidation and provided that IBKR would automatically exercise option contracts that expired "in the money."[1] The Complaint alleges that IBKR's automated systems did not distinguish between negligible actual risk and hypothetical maximum exposure for expiring options.

On December 31, 2020, plaintiff held 2,332 Tesla put option contracts at a $715 strike price that expired the same day. Plaintiff paid $1,128,688 in cash for these positions. Tesla's share price remained above $715 (meaning they were out of the money) from the time plaintiff purchased the options through the time the shares were forcibly liquidated. Defendant's automated risk systems flagged plaintiff's puts as an "expiration exposure," even though the Moomoo Account did not have a margin shortfall at that time. The Complaint alleges that this automatic alert "influenced Futu's decision to force liquidation, effectively dictating the outcome." Compl. ¶ 15. Before trading closed on December 31, 2020, Futu informed plaintiff that there was a margin call in the Moomoo Account and forcibly liquidated his 2,332 put option contracts. The Complaint alleges that this forced liquidation prevented plaintiff from realizing $3,044,931 in potential gains had the positions remained open.

On March 8, 2021, plaintiff initiated an arbitration proceeding against Futu for performing the margin call on his account. [Dkt. No. 5-2] at 1. Three hearings were held, two on May 24, 2022, and one on September 8, 2022, at which testimony was given—including testimony that identified IBKR's role as Futu's clearing broker—and documentary evidence was

---

[1] An "in-the-money" option is "an option that has value because selling or buying the underlying stock at the current market price would result in greater profit or less cost than exercising the option." OPTION, Black's Law Dictionary (12th ed. 2024).

2

presented. On September 16, 2022, the arbitration panel issued an award to Futu, denying all plaintiff's claims in their entirety. See id. at 3–5.

Plaintiff states in his opposition memorandum that, during the two years after the arbitration award was issued to Futu, plaintiff consulted securities experts; contacted attorneys for legal advice; researched IBKR's margin call policies and operational practices; and analyzed IBKR's public disclosures, regulatory filings, and prior litigation; all of which he did to try to discover what role IBKR played in the December 31, 2020 margin call. [Dkt. No. 14] at 12. Plaintiff claims that these efforts "yielded no IBKR-specific documents" until, on December 10, 2024, he wrote IBKR a letter demanding a settlement payment. Id. On January 28, 2025, IBKR sent a reply letter rejecting Karnani's demand. See Compl. Ex. A. Then, on February 3, 2025, plaintiff filed the ten-count Complaint at issue.

Count I alleges that defendant was negligent in misclassifying the margin requirements for the Moomoo Account by relying on automatic processes that trigger expiration exposure warnings based on hypothetical, rather than actual, market conditions and risk, and by improperly liquidating plaintiff's positions. Specifically, the Complaint alleges that defendant acted negligently when it classified plaintiff's out-of-the-money options as requiring liquidation.

Count II alleges that defendant is vicariously liable for Futu's forced liquidation of plaintiff's positions because defendant provided the margin classification and expiration risk data, and "maintained substantial control over Futu's decision-making processes." Id. ¶¶ 45–47.

Count III alleges fraud and misrepresentation due to defendant's representations in its Clearing Agreement with Futu that its margin and risk systems reflected actual exposure, when its systems actually misrepresented the true financial status of plaintiff's account (i.e., plaintiff's account posed no risk to Futu yet the system "misled" Futu into believing that immediate

3

liquidation was necessary). Id. ¶ 58. Count III further alleges that defendant "failed to ensure that Futu used [Contrary Exercise Notices ("CEN")] in plaintiff's case," which CENs could have prevented the liquidation, and "failed to disclose the full extent of its margin classification process, depriving Plaintiff of the ability to challenge the misclassification before liquidation occurred. This omission constitutes a material misrepresentation under Virginia law." Id. ¶¶ 61–62.

Count IV alleges breach of contract through a third-party beneficiary theory of liability, asserting that plaintiff is an intended third-party beneficiary to the Clearing Agreement, "as [the Agreement] directly dictated the treatment of his trades and the execution of risk-based decisions affecting his account." Id. ¶ 70. The breach was defendant's misclassification of plaintiff's out-of-the-money Tesla put option contracts as margin risks, and the alleged harm is the same as in the other counts—unnecessary liquidation.

Count V alleges gross negligence due to defendant's "reckless disregard for actual market conditions." Id. ¶ 77. "Defendant knew or should have known that its margin classification system was flawed, yet it continued to apply an excessive worst-case risk model." Id. ¶ 78.

Count VI alleges a violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-200(A), for the same misrepresentations and omissions alleged under the fraud count.

Count VII alleges common law conspiracy to commit fraud because of Futu's and IBKR's "coordinated scheme" to flag plaintiff's account as an "expiration exposure" despite it being fully compliant with all margin requirements at the time. Id. ¶¶ 93–94. "Defendant's margin classification was designed to overstate risk." Id. ¶ 98.

4

Count VIII alleges that defendant violated Virginia's Blue Sky Law—the Virginia Securities Act ("VSA"), Va. Code § 13.1-502—for the same conduct described above. The VSA makes it unlawful to employ a device, scheme, or artifice to defraud, or to make an untrue statement of material fact (or to omit any material fact) in connection with the sale or purchase of securities.

Count IX alleges that defendant breached its fiduciary duty to plaintiff for the same conduct described above. The Complaint alleges that defendant is "not merely a passive clearing firm," but that it "controlled the liquidation framework that resulted in Plaintiff's losses." Id. ¶¶ 115–17.

Count X does not allege a cause of action; rather, it consists of a request for injunctive and declaratory relief.

## II. DISCUSSION

As a preliminary matter, Count X does not allege a cause of action but merely cites the remedies sought. Therefore, it will be dismissed. See Cook v. VA Powhatan 60, LLC, No. 3:24-cv-434, 2025 WL 259202, at *5 (E.D. Va. Jan. 21, 2025) ("Where a remedy such as an injunction is improperly pled as a cause of action, it must be dismissed.").

### A. Time-barred Claims

Defendant argues that Counts III (fraud), VI (VCPA), VII (conspiracy to commit fraud), VIII (VSA), and IX (fiduciary duty) are time-barred by Virginia's two-year statute of limitations.[2] Plaintiff does not dispute that the relevant conduct occurred on December 31, 2020; instead, he argues that Virginia's discovery rule applies such that the limitations period did not

---

[2] Plaintiff incorrectly claims that the VSA claims have a five-year statute of limitations, citing to the provision that expressly states that there is a two-year statute of limitations. See Va. Code § 13.1-522(D).

begin to run until January 28, 2025, when plaintiff received the reply from IBKR to the letter he had sent requesting a settlement for the allegedly improper liquidation of his put options. See Compl. Ex. A. Plaintiff complains that his "diligent efforts to uncover IBKR's role were obstructed by FINRA Rule 12512's discovery limitations in the 2022 arbitration [], Futu's failure to provide documentary evidence, and IBKR's counsel's contradictory statements, delaying confirmation of IBKR's involvement until . . . January 28, 2025." [Dkt. No. 14] at 11.

Plaintiff's argument fails because there is no discovery rule for fiduciary duty or VSA claims. See Jones v. Shooshan, 855 F. Supp. 2d 594, 603 (E.D. Va. 2012) ("Virginia courts have repudiated the discovery rule for breach of fiduciary duty claims, and the majority of the federal courts in Virginia have followed suit."); Katz v. Holland & Knight LLP, 2009 WL 367204 at *5 (E.D. Va. Feb. 12, 2009) (finding that a breach of fiduciary duty claim accrues upon the date of breach, not the date of discovery); Caviness v. Derand Resources Corp., 983 F.2d 1295, 1305 (4th Cir. 1993) ("[T]he Virginia Blue Sky Law is subject to an absolute cutoff two years after the transaction on which the claim is based."). Plaintiff filed his Complaint on February 3, 2025, more than four years after the December 31, 2020 transaction at issue. Because Counts VIII and IX are clearly time-barred, they must be dismissed.

Under Virginia's discovery rule for fraud, conspiracy to commit fraud, and the VCPA, once a movant has shown that a plaintiff's claims are time-barred on the face of a pleading, the burden shifts to the plaintiff to show that, "despite the exercise of due diligence, he could not have discovered the alleged fraud within the two-year period before he commenced the action." Schmidt v. Household Fin. Corp., II, 661 S.E.2d 834, 839 (Va. 2008); see also Lesner Pointe Condo. Ass'n, Inc. v. Harbour Point Bldg. Corp., 61 Va. Cir. 609, at *8 (2002) ("Because the limitations period for civil conspiracy is based on the statute of limitations for the underlying act,

6

then Plaintiff's claims of fraud and civil conspiracy are subject to the same two-year period."); Schaefer v. Tectonics, II, Ltd., 77 Va. Cir. 1, at *2 (2008) ("Just as in fraud cases, causes of action under the Virginia Consumer Protection Act accrue on the date of discovery, or the date when pursuant to the exercise of due diligence it reasonably could be discovered. [Va. Code] § 8.01-249(1).").

Plaintiff has failed to meet this burden for multiple reasons. First, Karnani states in his opposition memorandum that, "[d]uring the arbitration (May 24–September 8, 2022), Futu's COO, Daniel Tickle, testified, 'The margin call was sourced from Interactive Brokers'" and Futu's counsel, Cameron Matheson, testified that IBKR demanded "68 million or liquidate." [Dkt. No. 14] at 12. This testimony clearly put plaintiff on notice of IBKR's involvement. Plaintiff argues, however, that because "these statements lacked documentary corroboration," they were not "actionable proof" that plaintiff could have relied on for further investigations. This argument is facially specious. Because this testimony was made under oath, it constituted concrete evidence that IBKR was the source of the margin call. As such, plaintiff's claim that he exercised due diligence to discover IBKR's role in the transaction fails.

Second, plaintiff argues that FINRA Rule 12512 prohibits third-party discovery, which prevented him from learning anything about IBKR's role during the arbitration proceedings. Defendant correctly responds that Rule 12512 expressly allows for third-party discovery: "(a)(1) Arbitrators shall have the authority to issue subpoenas for the production of documents or the appearance of witnesses. . . . (b) A party may make a written motion requesting that an arbitrator issue a subpoena to a party or a non-party." Accordingly, plaintiff's argument that FINRA rules precluded his access to evidence fails.

Plaintiff also claims to have consulted securities experts, contacted "other attorneys for legal advice," researched IBKR's margin call policies and operational practices, and analyzed IBKR's public disclosures, regulatory filings, and prior litigation, but that because these efforts "yielded no IBKR-specific documents," they did not put him on sufficient notice of IBKR's role to file a lawsuit, or to engage in the types of investigation necessary to file a lawsuit "without risking sanctions for unsubstantiated claims." [Dkt. No. 14] at 12. The discovery rule does not require either documentation or perfect proof of a legal violation. If plaintiff actually contacted competent attorneys, they should have informed him that his claims had a two-year limitations period and that the testimony at the arbitration hearing was enough on which to base a non-sanctionable claim, "on information and belief" at the very least. Even though plaintiff is proceeding pro se, his claims must comply with legal requirements, including the applicable statutes of limitations. Because the claims in Counts III, VI, VII, VIII, and IX are time-barred, they will be dismissed.[3]

### B. Counts I & V: Negligence and Gross Negligence

Counts I and V allege negligence and gross negligence, respectively, for defendant's role in "misclassifying margin requirements and improperly liquidating" plaintiff's position. Compl. ¶ 40. "The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." Blue Ridge Serv. Corp. v. Saxon Shoes, Inc., 271 Va. 206, 218 (2006).

---

[3] Even were these claims not time-barred, the Complaint fails to allege facts showing that IBKR made any representations to Karnani, that any statements it made were false, or that IBKR intended to deceive Karnani. The Complaint only alleges that IBKR's Clearing Agreement with Futu contained policies with which Karnani disagrees. Such allegations do not make out plausible causes of action.

8

Plaintiff's negligence claims fail because the Complaint does not allege facts that make out a plausible claim that IBKR owed plaintiff a duty of care. As a preliminary matter, Karnani and IBKR had no contractual relationship; IBKR was merely the clearing broker for Futu, which did have a contractual relationship with defendant. Although courts in Virginia have not addressed this issue, courts across the country agree that clearing brokers like IBKR generally owe no duties to individual investors like plaintiff. See, e.g., In re: Jan. 2021 Short Squeeze Trading Litig., No. 21-2989-MDL, 2023 WL 418821, at *16 (S.D. Fla. Jan. 9, 2023) ("[C]learing brokers simply do not owe duties to plaintiffs who are customers of their introducing brokers."); Riggs v. Schappell, 939 F. Supp. 321, 332 (D.N.J. 1996) ("the clearing broker owes no duty to the client of the introducing broker"); Ross v. Bolton, 904 F.2d 819, 824 (2d Cir. 1990) (clearing agent owed no fiduciary duty to investor); Burns v. Richfield Securities, Inc., 809 F.Supp. 860, 862 (D. Utah.1992) ("clearing brokers performing operational or ministerial duties are not liable to an investor or customer of the introducing broker").

Even if there could be a circumstance in which IBKR, as the clearing broker, owed a duty to one of its introducing broker's clients (such as plaintiff), the Complaint fails to plausibly allege facts making out a claim that IBKR breached any such duty. FINRA rules permit brokerage firms to set their own margin requirements. See FINRA Rule 4210(d), 2264 ("If the equity in your account falls below the maintenance margin requirements, or the firm's higher 'house' requirements, the firm can sell the securities or other assets in any of your accounts held at the firm to cover the margin deficiency."). The Complaint is replete with allegations that Karnani disapproves of IBKR's policies, but the Complaint also alleges that Futu, not IBKR, liquidated plaintiff's positions. That Futu relied on IBKR's automated "expiration exposure"

9

warning systems does not translate into a breach of a duty owed by IBKR to plaintiff. For all these reasons, Counts I and V will be dismissed.

### C. Vicarious Liability: Count II

The vicarious liability claim—that IBKR is responsible for Futu's liability to Karnani—is resolved under the doctrine of res judicata. The arbitration award dismissed plaintiff's claims against Futu for the same transaction for which he now seeks relief in federal court against Futu's clearing broker. The defendant correctly argued the standard for vicarious liability, which the Court here adopts:

> Karnani cannot plead a viable underlying claim against Futu because such a claim is barred by res judicata. Under Virginia law, a claim of res judicata is valid where "(1) there was a prior claim for relief decided on the merits by a valid and final judgment; (2) the parties are identical or in privity with each other; (3) the claim made in the later suit arises from the same conduct, transaction, or occurrence as the claim filed in the first suit." Brown v. Tompkins Builders, Inc., No. 3:16-cv-599, 2016 WL 7131504, at *2 (E.D. Va. Dec. 6, 2016). Karnani's claim against Futu satisfies all three elements. "A final judgment is essential to the imposition of res judicata to bar a claim." Kellogg v. Green, 809 S.E.2d 631, 635 (Va. 2018); see also Norris v. Mitchell, 495 S.E.2d 809, 812 (Va. 1998). A FINRA Arbitration satisfies this element. Colonial River Wealth Advisors, LLC v. Cambridge Inv. Rsch., Inc., No. 3:22-cv-717, 2023 WL 4627434, at *4–5 (E.D. Va. July 19, 2023). "When parties choose to resolve their disputes by arbitration rather than litigation, even though the resolution reached in that process does not require the application of legal principles, courts have applied the doctrine of res judicata to preclude subsequent litigation on issues resolved by validly issued arbitration awards." Waterfront Marine Const., Inc. v. N. End 49ers Sandbridge Bulkhead Grps. A, B & C, 468 S.E.2d 894, 902 (Va. 1996).

[Dkt. No. 5] at 13. Because Karnani may not re-raise the claims against Futu that have already been dismissed by a valid and binding final arbitration award, neither may he raise a vicarious liability claim based on the same underlying allegations. Accordingly, Count II will be dismissed.

### D. Breach of Contract: Count IV

Count IV alleges breach of contract under a third-party beneficiary theory of liability. "Under Virginia law, a third-party beneficiary is an intended third-party beneficiary if it can show by the evidence that the parties to the contract clearly and definitely intended to confer a direct benefit upon [the third party]." Kelley v. Griffin, 471 S.E.2d 475, 477 (Va. 1996). The contract at issue is the Clearing Agreement, which stated in bold type that it is "**BETWEEN INTERACTIVE AND INTRODUCING BROKER ONLY. NOTHING IN THIS AGREEMENT SHALL BE CONSTRUED TO BIND INTERACTIVE OR TO IMPOSE ANY LIABILITY OR OBLIGATION UPON INTERACTIVE WITH RESPECT TO INTRODUCING BROKER'S CUSTOMERS OR INTRODUCING BROKER WHOSE TRANSACTIONS ARE AFFECTED THROUGH THE CONSOLIDATED ACCOUNTS. THERE ARE NO BENEFICIARIES TO THIS AGREEMENT OTHER THAN INTERACTIVE AND INTRODUCING BROKER.**" Compl., Ex. E, p. 22 (emphasis in original). Virginia courts have found such unequivocal language disclaiming any third-party beneficiaries to a contract to be dispositive. See Env't Staffing Acquisition Corp. v. B & R Const. Mgmt., Inc., 725 S.E.2d 550, 554 (Va. 2012) ("The plain language of the [] Contract establishes that the parties to the contract did not intend to confer any rights upon a third party. . . . Thus, [plaintiff] cannot claim that it has a right of action under the [] Contract"); see also Century Indem. Co. v. Esso Standard Oil Co., 195 Va. 502, 509 (1954) ("It would be difficult to imagine a more unequivocal mode of negativing any . . . intention to benefit third parties than an express stipulation in the instrument to the effect that it is for the sole benefit of the obligee named therein."). Given this unequivocal language in the Clearing Agreement and the fact that IBKR did not know the identity of any individual investor within the Moomoo

11

Account, it is implausible that either IBKR or Futu intended their Clearing Agreement to benefit Karnani.

In addition to the Clearing Agreement expressly waiving any obligation to third parties, the Complaint does not allege facts making out a plausible claim that IBKR breached the Clearing Agreement. In sum, what is clear from his Complaint is that Karnani disagrees with the policies in the Clearing Agreement, and IBKR's and Futu's following these policies, not that IBKR breached any provision in the Agreement. For all these reasons, Count IV will be dismissed.

### III. CONCLUSION

For the reasons stated in open court and further explained above, defendant's Motion to Dismiss will be granted and plaintiff's Complaint will be dismissed with prejudice by an order accompanying this Memorandum Opinion.

Entered this 30 day of May, 2025.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

12